UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSE TIJERO, AMANDA GODFREY, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    vs.<br><br>AARON BROTHERS, INC, and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No:  C 10-01089 SBA<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Docket 90 |

       This is a wage-and-hour hybrid collective action and class action brought by Plaintiffs Jose Tijero ("Tijero") and Amanda Godfrey ("Godfrey") (collectively, "Plaintiffs") on behalf of themselves and all other similarly situated non-exempt hourly employees employed by Aaron Brothers, Inc. ("Defendant") from May 7, 2005 to the present.  The operative complaint alleges that Plaintiffs have violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; various California Labor Code sections and IWC Wage Orders, and California Business & Professions Code § 17200 et seq.

       The parties are presently before the Court on Plaintiffs' motion for preliminary approval of class action settlement.  Dkt. 90.  Plaintiffs request the Court grant preliminary approval of the proposed settlement, certify the proposed settlement class, approve the proposed notice plan, and schedule a final approval hearing.  Id.  Defendant

has not filed an opposition or statement of non-opposition as required by Civil Local Rule 7-3.[1]  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Plaintiffs' motion for preliminary approval of class action settlement, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.   BACKGROUND

On May 7, 2009, Plaintiff Tijero commenced the instant action in the Superior Court of the State of California, County of Alameda.  Compl., Dkt. 1.  On March 15, 2010, the action was removed to this Court under the Class Action Fairness Act ("CAFA").  Id.  On October 15, 2010, the complaint was amended to add Plaintiff Godfrey.  Dkt. 36.  On December 1, 2010, Plaintiffs filed a second amended complaint. Dkt. 38.  On April 1, 2011, the Court granted Defendant's motion to dismiss the second amended complaint.  Dkt. 46.  Plaintiffs filed a third amended complaint on April 22, 2011.  Dkt. 49.  A fourth amended complaint ("FAC") was filed on May 12, 2011.  Dkt. 51.

Defendant is a retailer of arts and crafts goods.  FAC ¶ 4.  Defendant operates in excess of 100 stores in California.  Id.  Plaintiff Tijero was employed by Defendant as a non-exempt assistant store manager from June 29, 2008 to September 20, 2008.  FAC ¶ 7.  Plaintiff Godfrey was employed by Defendant as a non-exempt sales associate and lead framer from May 27, 2007 to May 2010.  Id. ¶ 18.

Plaintiffs seek to represent a class of all non-exempt, hourly employees employed by Defendant in California since May 7, 2005.  Pls.' Mtn. at 2.  Plaintiffs generally allege that Defendant failed to compensate class members for all hours worked.  Id.  More specifically, Plaintiffs allege that Defendant failed to pay class members overtime wages,

---

[1] Plaintiffs represent that Defendant does not oppose the instant motion.  See Dkt. 90.

provide meal periods and rest breaks, pay minimum wages for work conducted "off the clock," pay compensation due at termination, and provide accurate wage statements.  Id. By this action, Plaintiffs seek recovery for unpaid wages under state and federal law.  Id. In addition, Plaintiffs seek state law penalties under the Private Attorney General Act ("PAGA"), Labor Code § 2698 et seq., and applicable state statutes.  Id.

The FAC alleges ten claims for relief: (1) unpaid wages in violation of Labor Code § 226 and IWC Wage Orders, including but not limited to, 7-2001; (2) unpaid overtime wages in violation of the FLSA, 29 U.S.C. § 207; (3) unpaid overtime in violation of Labor Code §§ 510 and 1194 and IWC Wage Orders Nos. 4-2000 and 4-2001; (4) failure to provide meal breaks in violation of Labor Code §§ 226, 226.7, 512 and 516 and IWC Wage Orders, including, but not limited to, 7-2001; (5) failure to provide rest breaks in violation of Labor Code §§ 226.7 and 516 and IWC Wage Orders, including, but not limited to, 7-2001; (6) failure to pay minimum wages for "off the clock" work in violation of Labor Code § 1197 and IWC Wage Orders Nos. 4-2000 and 4-2001; (7) failure to pay all compensation due at termination based on being paid final wages with a pay card in violation of Labor Code §§ 201, 202, 203, 218.5 and 218.6 and IWC Wage Orders, including, but not limited to, 7-2001; (8) failure to provide accurate wage statements in violation of Labor Code § 226; (9) violation of California Business & Professions Code §§ 17200-17208; and (10) violation of PAGA.  See FAC.  On May 31, 2011, Defendant filed an answer to the FAC.  Dkt. 51.

On April 4, 2012, the parties participated in a mediation overseen by private mediator David A. Rotman.  Pls.' Mtn. at 4.  After approximately ten hours of settlement negotiations, the parties reached an agreement to settle this matter for $800,000, inclusive of attorneys' fees and costs.  Id.  The Stipulation of Settlement ("Settlement Agreement") was finalized on August 7, 2012.  Id.  It states that the "Settlement Agreement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the

released claims subject to the terms and conditions set forth in this settlement."  See Settlement Agreement, Dkt. 90-2.

The salient terms of the settlement call for payment of $800,000 into a gross settlement fund for: (1) the claims of all settlement class members; (2) an award of attorneys' fees and costs; (3) incentive awards for Plaintiffs; (4) a PAGA penalty; and (4) all costs associated with claims administration.  Pls.' Mtn. at 5.  Defendant has agreed to pay the settlement amount in exchange for the release of claims against the "Released Parties"[2] as set forth in the Settlement Agreement.  Id. at 10.  Specifically, the release provision in the Settlement Agreement provides:

> In exchange for the payments by Defendant as described herein, upon the final approval by the Court of this Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, the Settlement Class and each member of that class, including the Named Plaintiffs (who shall not opt-out), jointly, severally, shall, and hereby do fully release and discharge Defendant and Released Parties from any and all claims, judgments, liens, losses, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, indemnities, actions, causes of action, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, arising out of or in any way relating to their employment with and/or termination of employment with Defendant, or any matter or event occurring up to the execution of this Settlement Agreement, arising out of the dispute which is the subject of the Lawsuit or which could have been asserted in the Lawsuit based on the facts alleged, whether in contract, violation of any state or federal statute, rule or regulation, arising out of, concerning, or in connection with any act or omission by or on the part of Released Parties, including, without limitation, those relating to the payment of wages, overtime, minimum wage, liquidated damages, penalties, uncompensated off-the clock work, methods of pay, wage statements, final pay penalties, expenses, deductions, or other alleged wage and hour violations and related record-keeping requirements, including without limitation, claims for

---

[2] " 'Released Parties' means Defendant, including all of Defendant's past and present successors, subsidiaries, investors, parents, holding companies, investors, sister and affiliated companies, divisions and other related entities, including but not limited to Michaels Stores, Inc., as well as the successors, predecessors, shareholders, subsidiaries, investors, parent, sister and affiliated companies, officers, directors, partners, assigns, agents, employees, principals, heirs, administrators, attorneys, vendors, accountants, auditors, consultants, fiduciaries, insurers, reinsurers, employee benefit plans, and representatives of each of them, both individually and in their official capacities, past or present, as well as all persons acting by, through, under or in concert with any of these persons or entities."  Settlement Agreement ¶ 2.1R.

> violation of the Fair Labor Standards Act, California Labor Code sections 201, 203, 212, 213, 218.5, 221, 223, 225.5, 226, 226.3, 450, 510, 1194, 1198, 2698, 2699, 2802, violation of Business & Professions Code section 17200, Code of Civil Procedure section 1021.5, any and all California Industrial Welfare Commission Orders, or any other California or federal laws relating to the payment or non-payment of wages based on the facts alleged in the Complaint from May 7, 2005, through the date of final approval of the settlement by the Court ('Released Claims').  Released Claims include any unknown claims that members of the Settlement Class do not know or suspect to exist in their favor, which if known by them, might have affected this Settlement Agreement with Defendant and release of Released Parties. The Released Claims do not include any workers' compensation claims, claims for physical bodily harm, discrimination claims, or any other claims not related to the Released Claims.

Settlement Agreement ¶ 2.8A.

After deducting attorneys' fees in the amount of $266,666.66 (which represents 33% of the common fund), costs in the amount of $30,000, incentive award payments to Plaintiffs in the collective amount of $10,000, claims administration fees in the amount of $68,000, and a PAGA penalty in the amount of $10,000, the net settlement amount, reflecting the amount available to pay claims made by class members, is projected to be $415,333.34.  Pls.' Mtn. at 5.  Based on the data provided by Defendant in connection with the mediation, class members were employed approximately 269,941 weeks for the period May 7, 2004[3] through the date of the mediation session.  Id. at 6.  Assuming a total of 269,941 weeks and a net settlement fund of $415,333.34, the average net payout would equate to approximately $1.54 per week.  Id.

According to records provided by Defendant, there are approximately 6,500 class members.  Pls.' Mtn. at 6.  Thus, assuming that a class member was employed 41 weeks during the subject claim period (269,941 weeks divided by 6,500 equals 41.53), the class member would receive the equivalent of $63.96.  Id.

///

///

---

[3] The Court notes that Plaintiffs seek to represent a class of all non-exempt hourly employees employed by Defendant in California since May 7, *2005*.  It is unclear whether the 2004 date is a typographical error.

## II.   **DISCUSSION**

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

### A.   **Class Certification**

The district court has discretion to certify a class action under Rule 23.  Meyer v. Portfolio Recovery Assocs., LLC, 696 F.3d 943, 947 (9th Cir. 2012).  To obtain class certification, the plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively."  United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010).  Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods.  Fed.R.Civ.P. 23(b)(3).  The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Rule 23.  Wal–Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011).

In general, "[b]efore certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23."  Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotations omitted).  When evaluating class certification in the context of a proposed settlement, courts "must pay 'undiluted, even heightened, attention' to class certification requirements" because, unlike in a fully litigated class action suit, the court

will not have future opportunities "to adjust the class, informed by the proceedings as they unfold." <u>Amchem Prods.</u>, 521 U.S. at 620; <u>accord</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).

### 1.      Rule 23(a)

#### a.      Numerosity

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).  In addition, the class should be "ascertainable," <u>Mazur v. eBay Inc.</u>, 257 F.R.D. 563, 567 (N.D. Cal. 2009), meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," <u>O'Connor v. Boeing N. Am., Inc.</u>, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  Here, Defendant's records establish that over 5,000 class members were employed by Defendant during the class period.  <u>See</u> Bachmeier Decl. ¶ 7, Dkt. 1.  This is facially sufficient to satisfy Rule 23's numerosity and ascertainability requirements.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1019 ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.' ").

#### b.      Commonality

"Commonality focuses on the relationship of common facts and legal issues among class members." <u>Hanlon</u>, 150 F.3d at 1021.  This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]" <u>Dukes</u>, 131 S.Ct. at 2551.  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of commons answers." <u>Id.</u>

Plaintiffs contend that the commonality requirement is satisfied because Defendant "had a policy of failing to provide meal periods and rest breaks and . . . a

policy of failing to pay proper overtime compensation to Plaintiffs and the settlement class for hours worked in excess of eight in a day or forty in a week." Pls.' Mtn. at 11. While Plaintiffs seek to represent all non-exempt hourly employees employed by Defendant within the class period, they failed to specifically identify all the job positions they seek to represent in connection with this request or explain their duties relative to the job positions they seek to represent. Instead, the common thread identified by Plaintiffs is that they and the class members were subject to the same policies.

In the typicality section of their motion, Plaintiffs state that they seek to represent all hourly non-exempt employees of Defendant, including managers, sales associates, framers, and *customer service representatives*. Pls.' Mtn. at 12 (emphasis added).[4] Plaintiffs, however, do not expressly state whether these are the only categories of employees they seek to represent. As such, it is unclear whether Plaintiffs have identified all the positions they seek to represent. For instance, Plaintiffs have not specified whether they seek to represent all "managers" or just assistant store managers. Moreover, Plaintiffs have not described the duties of the positions they held relative to the duties performed by the other class members. Since it is highly unlikely that all positions and job duties at Defendant's retail stores are identical, the Court is not persuaded that there are no dissimilarities in the proposed class that could "impede the generation of common answers apt to drive the resolution of the litigation." See Nielson v. Sports Authority, 2012 WL 5941614, at *3 (N.D. Cal. 2012) (Armstrong, J.) (citing Dukes, 131 S.Ct. at 2551; see Kelley v. SBC, Inc., 1998 WL 1794379, at *15 (N.D. Cal. 1998) (finding that commonality only existed as to class members who shared the job positions actually held by the plaintiff)). Thus, Plaintiffs have failed to establish commonality under Rule 23(a).

///

---

[4] The Court notes that while Plaintiff Tijero held the position of assistant store manager and Plaintiff Godfrey held the positions of sales associate and framer, it appears that neither of the Plaintiffs held the position of customer service representative.

### c.     Typicality

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representative.  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  <u>Hanlon</u>, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

Plaintiffs contend that the typicality requirement is satisfied because "the claims arise from the "same course of events" and rely on "similar legal arguments" to prove Defendant's liability.  Pls.' Mtn. at 12.  Though Plaintiffs have failed to elaborate further on this vague and conclusory assertion, the Court presumes that Plaintiffs are claiming that they and the class members suffered the same injury; that is, Defendant's misclassification of employees and concomitant failure to, among other things, pay overtime and provide meal and rest periods violated state and federal law.  Courts have found Plaintiffs' theory of typicality acceptable - *but only as to the positions that the plaintiff actually held*.  <u>See</u> <u>Nielson</u>, 2012 WL 5941614, at *3 (citing <u>Campbell v. PriceWaterhouseCoopers, LLP</u>, 253 F.R.D. 586, 603-604 (E.D. Cal. 2008); <u>Kelley</u>, 1998 WL 1794379, at *15)).  Here, Plaintiffs seek to represent all non-exempt hourly employees employed by Defendant within the class period.  However, as noted above, Plaintiffs have failed to sufficiently identify all the positions they seek to represent and to describe the duties of those positions.  Moreover, Plaintiffs concede that they seek to represent employees that held a position in which neither of them held; namely, customer service representative.  Accordingly, the Court finds that Plaintiffs have failed to establish that their claims are typical of those of the class.

///

### d.     Adequacy of Representation

Members of a class may sue as representatives on behalf of the class only if they will fairly and adequately protect the interests of the class as a whole.  Fed.R.Civ.P. 23. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Hanlon</u>, 150 F.3d at 1020.  While there is nothing to indicate that Plaintiffs or their counsel have any conflicts of interest with other class members or that their interest in this case is insufficient to ensure vigorous representation, no specific information is provided in the instant motion about Plaintiffs beyond the fact that they were non-exempt employees that worked for Defendant as an assistant store manager and a sale associate and framer, respectively.  Given the absence of information about Plaintiffs, and given that Plaintiffs seek to represent employees that held a position that they did not hold, the Court cannot conclude, at this juncture, that Plaintiffs are adequate class representatives.

### 2.     Rule 23(b)(3)

Finally, Plaintiff has not sufficiently demonstrated that it would be appropriate to certify the settlement class under Rule 23(b)(3).  This provision requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.R.Civ.P. 23(b) (3).  These provisions are referred to as the "predominance" and "superiority" requirements.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1022-1023.

Plaintiffs contend that the requirements of Rule 23(b)(3) are satisfied, ostensibly because Plaintiffs and class members seek the same relief as a result of the same policy of misclassifying non-exempt employees.  <u>See</u> Pls.' Mtn. at 13.  But to secure certification under Rule 23(b)(3), Plaintiffs must offer more than vague references to Defendant's "general policies"  <u>See</u> <u>id.</u>  "Whether such a policy is in place or not, courts must still ask

where the individual employees actually spent their time." In re Wells Fargo Home
Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009).  Since the Plaintiffs'
motion provides no such elucidation, the Court finds that Plaintiffs have failed to satisfy
the predominance and superiority requirements of Rule 23(b)(3).

In sum, the Court concludes that Plaintiffs have failed to demonstrate that
conditional class certification under Rule 23(a) and (b)(3) is warranted.

**B.      Fairness of the Settlement**

Rule 23 requires judicial review of any settlement of the "claims, issues, or
defenses of a certified class." Fed.R.Civ.P. 23(e).  The decision of whether to approve a
proposed class action settlement entails a two-step process. See Manual for Complex
Litig. § 21.632 (4th ed. 2004).  The Court first conducts a preliminary fairness evaluation.
Id.  If the Court preliminarily approves the settlement, notice to the class is then
disseminated and a "fairness" or final approval hearing is scheduled.  Id.  The second step
of the process culminates in a fairness hearing at which the proponent of the settlement
must demonstrate that the settlement is "fair, reasonable, and adequate." Id.;
Fed.R.Civ.P. 23(e)(2).  "The purpose of Rule 23(e) is to protect the unnamed members of
the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA
Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

"The initial decision to approve or reject a settlement proposal is committed to the
sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n of the
City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).  Where, as here, a
settlement has been reached prior to formal class certification, "a higher standard of
fairness" applies due to "[t]he dangers of collusion between class counsel and the
defendant, as well as the need for additional protections when the settlement is not
negotiated by a court designated class representative[.]" Hanlon, 150 F.3d at 1026.[5]  In

---

[5] Incentives inhere in class-action settlement negotiations that can, unless checked
through careful district court review of the resulting settlement, result in a decree in

undertaking a fairness inquiry, the settlement must be "taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id.  The Court has no power to "delete, modify or substitute certain provisions"—and the settlement "must stand or fall in its entirety." Id.

To make a fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003).  Given that some of these "fairness" factors cannot be fully assessed until the Court conducts the final approval hearing, " 'a full fairness analysis is unnecessary at this stage.' " See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted).  Rather, preliminary approval of a settlement and notice to the proposed class is appropriate: if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ." In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, § 30.44 (2d ed.1985)).

///

which the rights of class members, may not be given due regard by the negotiating parties. Staton, 327 F.3d at 959-960 (characterizing the inherent dangers of class settlements as encompassing the possibility that the agreement is the product of fraud or overreaching by, or collusion between, the negotiating parties); see In re General Motors Corp. Pick-Up Truck Fuel Tank Prod.'s Liab. Litig., 55 F.3d 768, 778 (3d Cir. 1995) (describing the potential for class action lawsuits to be "a vehicle for collusive settlements that primarily serve the interests of defendants-by granting expansive protection from lawsuits-and of plaintiffs' counsel-by generating large fees gladly paid by defendants as a quid pro quo for finally disposing of many troublesome claims").

### 1.      The Settlement Process

In the instant case, the settlement was reached after the parties participated in private mediation, which "tends to support the conclusion that the settlement process was not collusive."   Villegas v. J.P. Morgan Chase & Co., 2012 WL 5878390, at *6 (N.D. Cal. 2012).  In addition, Plaintiffs assert that they have conducted a thorough investigation into the facts of this case and that the parties have engaged in extensive discovery and motion practice over the nearly three-year period from the commencement of this action until the mediation session.  See Pls.' Mtn. at 16; Badame Decl. ¶ 7; Feder Decl. ¶ 14; Marsh Decl. ¶ 7.  A review of the docket reveals that Defendant filed a motion to dismiss the first, second, third, fourth, fifth, sixth, eighth, ninth and tenth claims, which was granted.  See Dkt. 46.  The docket also reveals that Defendant filed a motion for partial summary as to Plaintiff Tijero, Dkt. 70, and a motion for summary judgment as to Plaintiff Godfrey, Dkt. 72, which were fully briefed at the time the parties reached a settlement of this matter.  These facts further support the conclusion that the parties were aggressively litigating this action and were appropriately informed in negotiating the settlement.

### 2.      Obvious Deficiencies

#### a.      Release of FLSA Claims

The Court finds that the proposed settlement is obviously deficient because approval of the settlement would violate the FLSA.  The operative complaint includes a claim under the FLSA as well as state wage-and-hour and unfair business practices claims.  Plaintiffs' motion for preliminary approval, however, seeks only to conditionally certify a Rule 23 opt-out class; it does not seek to conditionally certify a FLSA opt-in collective action.  Pls.' Mtn. at 10-13.  Yet, the parties seek a settlement, "as between the Settlement Class[6] and Defendant," "any and all claims, damages, remedies sought or

---

[6] "Settlement Class" is defined to mean "those persons who are members of the classes who have not properly and timely opted out of the instant action in connection

causes of action alleged in the [FAC]," which includes the FLSA claim. <u>See</u> Settlement Agreement ¶ 2.2 (footnoted added).

Indeed, the release provision in the Settlement Agreement provides, among other things, that each member of the Settlement Class will release all claims against the Released Parties whether "known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, arising out of or in any way relating to their employment with and/or termination of employment with Defendant. . . ." Settlement Agreement ¶ 2.8A. The Settlement Agreement also provides that unless an "Authorized Claimant" (i.e., class member)[7] submits a valid request for exclusion, the Authorized Claimant shall be a member of the class and shall be bound by all terms of the Settlement Agreement. <u>Id.</u> ¶ 2.11F. Thus, under the terms of the Settlement Agreement, if a class member does not opt-out of the settlement (i.e., does nothing in response to the class notice) he or she will be part of the Settlement Class and will release liability under the FLSA.

The FLSA requires employers to pay an overtime rate of one and one-half times their regular pay rate for hours worked over forty hours in a week. 29 U.S.C. § 207(a). Federal wage claims under the FLSA cannot be filed as a class action under Rule 23; instead, an aggrieved employee may bring a collective action on behalf of himself and other employees "similarly situated" based on an employer's failure to adequately pay overtime wages. 29 U.S.C. § 216(b). The FLSA limits participation in a collective action to only those parties that "opt-in" to the suit. <u>Id.</u> ("No employee shall be a party

---

with the opt-out procedures described herein associated with the Notice of Settlement." Settlement Agreement ¶ 2.1U. While this definition refers to "classes," the Court notes that the parties only seek to conditionally certify a Rule 23 class.

[7] "Authorized Claimant" is defined to mean "persons employed by Defendant as non-exempt hourly employees within the State of California between May 7, 2005 and the date of the entry of the Court's Order Granting Preliminary Approval of this Settlement Agreement." Settlement Agreement ¶ 2.1C.

plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

"A 'collective action' differs from a class action."  <u>McElmurry v. U.S. Bank Nat. Ass'n</u>, 495 F.3d 1136, 1139 (9th Cir. 2007).  In a class action brought under Rule 23, all members of a certified class are bound by the judgment unless they opt-out of the suit.  <u>Id.</u>  In contrast, in a collective action under the FLSA, only those claimants who affirmatively opt-in by providing a written consent are bound by the results of the action.  <u>Id.</u>  Accordingly, the Court finds that it is contrary to § 216(b) to bind class members to a release of FLSA claims where, as here, the members have not affirmatively elected to participate in the lawsuit by filing a written consent form.  <u>See</u> <u>Khanna v. Inter-Con Sec. Systems, Inc.</u>, 2012 WL 4465558, at *2 (E.D. Cal. 2012) (an employee must "opt-in" to the FLSA action to be bound by its resolution); <u>Kakani v. Oracle Corp.</u>, 2007 WL 1793774, at *7 (N.D. Cal. 2007) (finding that settlement would violate FLSA where release took away the FLSA rights of all workers, whether or not they choose to affirmatively join the action); <u>La Parne v. Monex Deposit Co.</u>, 2010 WL 4916606, at *3 C.D. Cal. 2010) ("only class members who affirmatively 'opt-in' to the Settlement should be bound by the Settlement's release of FLSA liability").

### b.    Scope of the Release

Under the terms of the Settlement Agreement, upon final approval of the settlement, class members will be deemed to have released the Released Parties from "any and all claims . . . and obligations of every kind and nature[,] . . . known or unknown[,] . . . arising out of or in any way relating to their employment . . . and/or termination of employment with Defendant, or any matter or event occurring up to the execution of this Settlement Agreement, arising out of the dispute which is the subject of the Lawsuit or which could have been asserted in the Lawsuit based on the facts alleged. . . . Released Claims include any unknown claims that members of the Settlement Class do not know or suspect to exist in their favor, which if known by them, might have

affected this Settlement Agreement with Defendant and release of Released Parties."
Settlement Agreement ¶ 2.8A.  The release provision also provides that the "Settlement
Agreement shall be binding on all non-opt out members of the Settlement Class, whether
or not they actually receive a payment pursuant to this Settlement Agreement," and that
the release "shall constitute, and may be pleaded as, a complete and total defense to any
Released Claims if raised in the future."  Id. ¶ 2.8B.

      The Court finds that the scope of the release is overly broad and improper.  The
release does not appropriately track the extent and breadth of Plaintiffs' allegations in the
FAC and releases unrelated claims.  Indeed, the release provision provides that class
members will, among other things, release "any and all claims . . . arising out of or in any
way relating to their employment with and/or termination of employment with
Defendant. . . ."  See Bond. v. Ferguson Enterprises, Inc., 2011 WL 284962, at *7 (E.D.
Cal. 2011) (finding release overbroad where release did not track the extent and breadth
of Plaintiffs' allegations and released unrelated claims of any kind or nature up to the date
of the agreement); see also Kakani, 2007 WL 1793774, at *2-3 (rejecting a settlement in
part because of the "draconian scope" of the proposed release, which, among other things,
released and forever discharged the defendant from any and all claims that were asserted
or could have been asserted in the complaint whether known or unknown and precluded
any attempt by class members to prosecute a lawsuit with respect to the released claims).

      The Court also has concerns with the language in the release provision providing
that the Settlement Agreement "shall be binding on all non-opt out members of the
Settlement Class, whether or not they actually receive a payment pursuant to this
Settlement Agreement. . . ."  Settlement Agreement ¶ 2.8B.  As noted above, the
Settlement Agreement provides that a class member shall be a member of the class and
shall be bound by all terms of the Settlement Agreement unless he or she submits a valid
request for exclusion.  Id. ¶ 2.11F.  There is no provision in the Settlement Agreement

that excludes putative class members from the Settlement Class whose class notice is returned as undeliverable by the United States Post Office.

Thus, although not entirely clear, the Settlement Agreement appears to provide that if class notice is undeliverable to a class member, that member will not receive a settlement payment but any and all claims against the Released parties "arising out of or in any way relating to their employment with and/or termination of employment with Defendant" will be released.  See Ortiz v. Fibreboard Corp., 527 U.S. 815, 848 (1999) ("before an absent class member's right of action was extinguishable due process require[s] that the member 'receive notice plus an opportunity to be heard and participate in the litigation,' and . . . 'at a minimum . . . an absent plaintiff [must] be provided with an opportunity to remove himself from the class.' "); Kakani, 2007 WL 1793774, at *2-3, 5-6 (rejecting a settlement in part because the settlement agreement provided that class members were bound by the terms of the settlement agreement, including the release, even if the member did not receive notice of the settlement).

### c.      Opt-Out and Objection Period

Finally, the Court has concerns regarding the parties' proposal that class members should only have thirty (30) days to opt-out of the settlement or to submit objections to the settlement.  Pls.' Mtn. at 21-22.  The short period proposed by the parties is likely to decrease the number of opt-outs and objections submitted.  The Court finds that the parties' proposal does not adequately protect the interests of the class, which includes providing class members sufficient time to make a fully informed decision on whether to participate in this action and, if so, whether any objection is appropriate.  Thus, should Plaintiffs attempt to renew their motion for preliminary approval, they should ensure that class members are afforded at least sixty (60) days to opt-out or object to the settlement.

### 3.      Preferential Treatment

Under the third factor, the Court examines whether the settlement provides preferential treatment to any class member.  The Settlement Agreement provides that

settlement payments to class members are to be based on the number of pay periods that
each individual class member worked during the class period, subject to reduction for any
pay periods covered by a prior settlement.  Settlement Agreement ¶ 2.6.  At this juncture,
the Court is not satisfied that the allocation of the settlement fund does not unfairly
benefit certain class members.

As previously indicated, Plaintiffs seek to represent a class of all non-exempt
hourly employees employed by Defendant in California since May 7, 2005.  Pls.' Mtn. at
2.  Plaintiff Tijero was employed by Defendant as an assistant store manager, while
Plaintiff Godfrey was employed by Defendant as a non-exempt part-time sales associate
and as a non-exempt part-time framer.  Id. at 11.  The settlement class they seek to
represent, however, consists of all non-exempt hourly positions, including, at a minimum,
managers, sales associates, framers, and customer service representatives.  Id.  Plaintiffs
make no effort to identify the range of hourly wages[8] paid to employees in the various job
positions they seek to represent or explain why a settlement payment based entirely on
pay periods worked does not provide preferential treatment to class members who
worked on a part-time basis and/or were paid at a lower hourly rate.  Since it is highly
unlikely that all non-exempt hourly employees at Defendant's stores are paid the same or
worked the same hours per week, and since the Settlement Agreement directs that
settlement payments be made based simply on the number of pay periods an individual
worked during the class period (subject to reduction for any pay periods covered by a
prior settlement), the Court is not persuaded that the settlement does not provide
preferential treatment to certain segments of the class.

///

///

---

[8] The FAC alleges that Plaintiff Tijero was paid an hourly rate of approximately
$18.90.  FAC ¶ 8.  The FAC does not identify the hourly rate Plaintiff was paid as a part-
time sales associate or as a part-time framer.

### 4. Range of Possible Approval

Lastly, the Court must consider whether the settlement falls within the range of possible approval.  To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  In re Tableware Antitrust Litig., 484 F.Supp.2d at 1080.  Here, Plaintiffs contend that the "settlement is well within the range of reasonableness" because "[m]embers of the settlement class will receive a pro-rata portion of the maximum settlement amount [i.e., $800,000 less attorneys' fees, costs, incentive award payments, claims administration costs, and a PAGA penalty payment] based on their work as an hourly employee for [Defendant] in California during the relevant time period."  Pls.' Mtn. at 15.  Plaintiffs, however, did not provide further elaboration with respect to this conclusory assertion.  Plaintiffs did not submit any information that would enable the Court to determine that the settlement falls within the range of possible approval, including information establishing the maximum recovery Plaintiffs could have obtained if the action were concluded on the merits in their favor.  Plaintiffs have not provided any information on the potential range of recovery.  Absent such information, the Court is unable to assess, at this juncture, whether the proposed settlement is reasonable.

### III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion is DENIED without prejudice to the filing of a renewed motion that addresses the deficiencies discussed above.

2. This Order terminates Docket 90.

IT IS SO ORDERED.

Dated:  12/20/12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge