UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSE TIJERO, AMANDA GODFREY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AARON BROTHERS, INC, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No:  C 10-01089-SBA<br><br>**ORDER GRANTING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Docket 93 |

This is a wage-and-hour hybrid collective action and class action brought by Plaintiffs Jose Tijero ("Tijero") and Amanda Godfrey ("Godfrey") (collectively, "Plaintiffs") on behalf of themselves and all other similarly situated non-exempt hourly employees employed by Aaron Brothers, Inc. ("Defendant") from May 7, 2005 to the present.  The operative complaint alleges that Plaintiffs have violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., various California Labor Code sections and IWC Wage Orders, and California Business & Professions Code § 17200 et seq.

The parties are presently before the Court on Plaintiffs' renewed motion for preliminary approval of class action settlement.  Dkt. 93.  Plaintiffs request the Court, among other things, grant preliminary approval of the proposed settlement, certify two settlement classes, approve the proposed notice plan, and schedule a Final Fairness

Hearing.  Id.  Defendant has filed a statement of non-opposition.  Dkt. 94.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Plaintiffs' motion for preliminary approval of class action settlement, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.      BACKGROUND

On May 7, 2009, Tijero commenced the instant action in the Superior Court of the State of California, County of Alameda.  Compl., Dkt. 1.  On March 15, 2010, the action was removed to this Court under the Class Action Fairness Act ("CAFA").  Id.  On October 15, 2010, the complaint was amended to add Godfrey.  Dkt. 36.  On December 1, 2010, Plaintiffs filed a second amended complaint.  Dkt. 38.  On April 1, 2011, the Court granted Defendant's motion to dismiss the second amended complaint.  Dkt. 46. Plaintiffs filed a third amended complaint on April 22, 2011.  Dkt. 49.  A fourth amended complaint ("FAC") was filed on May 12, 2011.  Dkt. 51.

Defendant is a retailer of arts and crafts goods.  FAC ¶ 4.  Defendant operates in excess of 100 stores in California.  Id.  Tijero was employed by Defendant as a non-exempt assistant store manager from June 29, 2008 to September 20, 2008.  FAC ¶ 7. Godfrey was employed by Defendant as a non-exempt sales associate and lead framer from May 27, 2007 to May 2010.  Id. ¶ 18.

Plaintiffs seek to represent a Federal Rule of Civil Procedure 23 class and a FLSA collective action consisting of all non-exempt, hourly employees employed by Defendant in the State of California from May 7, 2005 to the present ("Class Period").  Pls.' Mot. at 4.  According to Plaintiffs, all retail store level employees were subject to the same company policies and practices relating to, among other things, off-the-clock work, overtime, meal periods, and rest breaks.  Id. at 1, 4.  Plaintiffs allege that Defendant failed to pay them and putative  class members overtime wages, failed to provide meal periods

and rest breaks, failed to pay minimum wages for work conducted "off the clock," failed to pay compensation due at termination, and failed to provide accurate wage statements. Id. at 4.  By this action, Plaintiffs seek recovery for unpaid wages under state and federal law, including the FLSA.  Id.  In addition, Plaintiffs seek state law penalties under the Private Attorney General Act ("PAGA"), Labor Code § 2698 et seq., and applicable state statutes.  Id.

The FAC alleges ten claims for relief: (1) unpaid wages in violation of Labor Code § 226 and IWC Wage Orders, including but not limited to, IWC Wage Order 7-2001; (2) unpaid overtime wages in violation of the FLSA, 29 U.S.C. § 207; (3) unpaid overtime in violation of Labor Code §§ 510 and 1194 and IWC Wage Orders Nos. 4-2000 and 4-2001; (4) failure to provide meal breaks in violation of Labor Code §§ 226, 226.7, 512 and 516 and IWC Wage Orders, including, but not limited to, IWC Wage Order 7-2001; (5) failure to provide rest breaks in violation of Labor Code §§ 226.7 and 516 and IWC Wage Orders, including, but not limited to, IWC Wage Order 7-2001; (6) failure to pay minimum wages for "off the clock" work in violation of Labor Code § 1197 and IWC Wage Orders Nos. 4-2000 and 4-2001; (7) failure to pay all compensation due at termination based on being paid final wages with a pay card in violation of Labor Code §§ 201, 202, 203, 218.5 and 218.6 and IWC Wage Orders, including, but not limited to, IWC Wage Order 7-2001; (8) failure to provide accurate wage statements in violation of Labor Code § 226; (9) violation of California Business & Professions Code §§ 17200-17208; and (10) violation of PAGA.  See FAC.  On May 31, 2011, Defendant filed an answer to the FAC.  See FAC.

On April 4, 2012, the parties participated in a mediation overseen by private mediator David A. Rotman.  Pls.' Mot. at 6.  After approximately ten hours of settlement negotiations, the parties reached an agreement to settle this matter for $800,000, inclusive of attorneys' fees and costs.  Id.  The Stipulation of Settlement ("Settlement Agreement") was finalized on August 7, 2012.  Id.  Following the denial of Plaintiff's first motion for

preliminary approval of class action settlement, the Settlement Agreement was revised and fully executed on March 4, 2013.  Id.

The salient terms of the settlement call for payment of $800,000 into a gross settlement fund for: (1) the claims of all settlement class members; (2) an award of attorneys' fees and costs; (3) incentive awards for Plaintiffs; (4) a PAGA penalty; and (5) all costs associated with claims administration.  Pls.' Mot. at 7.  Defendant has agreed to pay the settlement amount in exchange for the release of claims against the "Released Parties" as defined in the Settlement Agreement.[1]  Id. at 12.

After deducting attorneys' fees in the amount of $266,666.66 (which represents 33% of the common fund), costs in the amount of $30,000, incentive award payments to Plaintiffs in the collective amount of $10,000, maximum payment to Rule 23 class members who do not opt-out in the amount of $65,000, claims administration fees in the amount of $72,000, and a PAGA penalty in the amount of $10,000, the net settlement amount is projected to be $346,333.34 ("Net Settlement Fund").  Pls.' Mot. at 7.  Under the terms of the Settlement Agreement, the Net Settlement Fund is to be allocated among each qualified settlement class member who does not timely opt-out based on a formula which incorporates the class members' respective classification as a "full-time" or "part-time" employee, coupled with the number of pay periods (i.e., workweeks) the individual

---

[1] " 'Released Parties' means Defendant, including all of Defendant's past and present successors, subsidiaries, investors, parents, holding companies, investors, sister and affiliated companies, divisions and other related entities, including but not limited to Michaels Stores, Inc., as well as the successors, predecessors, shareholders, subsidiaries, investors, parent, sister and affiliated companies, officers, directors, partners, assigns, agents, employees, principals, heirs, administrators, attorneys, vendors, accountants, auditors, consultants, fiduciaries, insurers, reinsurers, employee benefit plans, and representatives of each of them, both individually and in their official capacities, past or present, as well as all persons acting by, through, under or in concert with any of these persons or entities."  Settlement Agreement ¶ 2.1S.

worked during the class period, and subject to reduction for any pay periods covered by a prior settlement.[2] Id. at 8.

Based on the data provided by Defendant, putative class members were employed approximately 269,941 weeks for the period May 7, 2005 through the date of the mediation session.  Pls.' Mot. at 8.  Assuming a total of 269,941 weeks and a net settlement fund of $346,333.34, the base rate for pro rata net weekly payout ("Base Rate") equals approximately $1.28 per week ($346,333.34 ÷ 269,941).  Pls.' Mot. at 8. In order to insure that all class members are compensated fairly, the parties have agreed to a "multiplier" allocation formula which will be implemented as follows: full-time employees who submit a valid claim form and do not timely opt-out, will receive a settlement award based on their respective number of pay periods worked during the class period multiplied by a factor equaling two-thirds of the Base Rate or approximately $0.85 per week worked ($1.28 x 2/3 = $0.85).  Id.  Part-time employees who submit a valid claim form and do not timely opt-out, will receive a settlement award based on their respective number of pay periods worked during the class period multiplied by a factor equaling one-third of the Base Rate (i.e., half the rate applied to their full-time counterparts), or approximately $0.43 per week worked ($1.28 x 1/3 = $0.43).  Id. at 8-9. Each settlement class member who does not timely opt-out of the Rule 23 class will receive a nominal settlement award of $10.00 per claimant, to be deducted from the Net Settlement Fund.  Id. at 9.  This $10.00 payment will be in addition to any funds recovered by settlement class members who submit a timely and valid Claim Form.  Id.

---

[2] Based on data provided by Defendant, during the class period, approximately 14% of the settlement class members were employed exclusively on a full-time basis, approximately 77% were employed exclusively on a part-time basis, and approximately 9% held both full and part-time positions during the class period.  Pls.' Mot. at 8.  Full-time employees are required to work a minimum of 32 hours per week, and, according to Defendant's records, worked an average of 38 hours per week during the class period.  Id. Part-time employees are required to work between 8 and 31 hours per work and, according to Defendant's records, worked an average of 17 hours per week during the class period—approximately half that worked by their full-time counterparts.  Id.

Applying the above allocation formula, a putative class member who was employed full-time by Defendant for the class average of approximately 41.53 weeks during the class period (269,941 workweeks ÷ 6,500 class members = 41.53) would be entitled to a settlement award of $35.30 (41.53 x $0.85 (full-time employee rate factor) = $35.30). See Pls.' Mot. at 9. A part-time employee who worked the same number of weeks would stand to recover $17.85 (41.53 x $0.43 (part-time employee rate factor) = $17.85). See id.

In the instant motion, the parties seek conditional certification of both a Rule 23 class action and a FLSA collective action consisting of all non-exempt, hourly employees employed by Defendant in California since May 7, 2005 to the present.[3] The parties propose a hybrid opt-in/opt-out method in which putative class members receive a notice packet containing a Class Notice Form and a Class Claim Form. See Badame Decl., Exh. B. The Class Notice Form, among other things, notifies putative class members about the proposed settlement and explains their options regarding participation in the Rule 23 class action and the FLSA collective action. Id. The Claim Form serves as the FLSA opt-in form and must be submitted by a putative class member in order for them to receive a full settlement award. Id. The Claim Form advises putative class members that by submitting the form they are opting-in to the FLSA collective action unless they check a box indicating otherwise. Id. The Claim Form also advises putative class members that their settlement award will be reduced if they do not submit a Claim Form. Id. If putative class members do nothing, i.e., do not submit a Claim Form, they will receive $10.00 and will release their Rule 23 state law claims but will retain their right to pursue a FLSA claim against Defendant. Id. Finally, if a putative class member mails a letter to the Claims Administrator expressly stating that he/she wishes to opt-out of the proposed

---

[3] All putative Rule 23 class members are also eligible to be members of the FLSA collective action.

settlement, he/she will receive no settlement payment, but will retain his/her right to sue Defendant based on any of the claims settled in this matter.  Id.

## II.   DISCUSSION

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

### A.   Conditional Class Certification

Plaintiffs seek conditional certification of a settlement class under Rule 23(a) and (b)(3).  To obtain class certification, the plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010).  Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods.  Fed.R.Civ.P. 23(b)(3).  The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Rule 23.  Wal–Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011).

In general, "[b]efore certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotation marks omitted).  When evaluating class certification in the context of a proposed settlement, courts "must pay 'undiluted, even heightened, attention' to class

certification requirements" because, unlike in a fully litigated class action suit, the court will not have future opportunities "to adjust the class, informed by the proceedings as they unfold." Amchem Prods., 521 U.S. at 620; accord Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

### 1.   Rule 23(a)

#### a.   Numerosity

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).  In addition, the class should be "ascertainable," Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009), meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998).  Here, based on its records, Defendant estimates that more than 6,000 individuals were employed by Defendant during the class period.  See Bachmeier Decl. ¶ 7, Dkt. 1.  This is facially sufficient to satisfy Rule 23's numerosity and ascertainability requirements.  See Hanlon, 150 F.3d at 1019 ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.' ").

#### b.   Commonality

The commonality requirement requires that there be "questions of law or fact common to the class."  Fed.R.Civ.P. 23(a)(2).  "A class has sufficient commonality 'if there are questions of fact and law which are common to the class.' "  Hanlon, 150 F.3d at 1019.  The commonality requirement should be "construed permissively," meaning that "[a]ll questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Id.

The Court previously found that Plaintiffs' showing of commonality was deficient because they failed to specifically identify all of the job positions they seek to represent

in this action and to explain their duties relative to the job positions they seek to represent, thereby impeding a determination of whether issues of fact and law were common to the class.  In the instant motion, Plaintiffs clarify that their job duties and the putative class members' job duties are not pertinent to the claims at issue since *all* non-exempt employees were subject to the same unlawful wage and hour policies and practices of Defendant, including, but not limited to, Defendant's policy of failing to provide meal periods and rest breaks, and Defendant's policy of failing to pay proper overtime compensation to Plaintiffs and the settlement class for hours worked in excess of eight in a day or forty in a week.  With that clarification, the Court is satisfied that the Plaintiffs have met the commonality requirement.

### c.      Typicality

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives.  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

In its prior order, the Court found that Plaintiffs had failed to demonstrate that their claims were typical of those of absent class members because they did not sufficiently identify all the positions they seek to represent in this action and describe the duties of those positions, and because they seek to represent employees that held a position in which neither of them held; namely, customer service representative. However, as discussed above, Plaintiffs have clarified that they seek to represent all non-exempt employees that were not properly compensated due to the same unlawful policies

and practices of Defendant.  Accordingly, the Court finds that Plaintiffs have shown that their claims are typical of those of the putative class members.

### d.      Adequacy of Representation

Members of a class may sue as representatives on behalf of the class only if they "will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.  The Court previously determined that it lacked sufficient information to assess whether the adequacy requirement had been satisfied because Plaintiffs failed to provide sufficient information about themselves, including the nature of the job positions they held, and because Plaintiffs seek to represent employees that held a position that they did not hold.  However, Plaintiffs' clarification of their theory of the case addresses the Court's concerns regarding Plaintiffs' adequacy to represent the class.  Having reviewed the record, the Court finds that there is nothing indicating that Plaintiffs or their counsel have a conflict of interest with the putative class members. Further, the record reveals that Plaintiffs and their counsel have prosecuted this action vigorously on behalf of the class.  Accordingly, the Court finds that the adequacy requirement is satisfied.

### 2.      Rule 23(b)(3)

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.R.Civ.P. 23(b) (3).  These provisions are referred to as the "predominance" and "superiority" requirements.  See Hanlon, 150 F.3d at 1022-1023.  In its prior order, the Court found that Plaintiffs vague references to Defendant's "general policies" were insufficient to satisfy the predominance and

superiority requirements of Rule 23(b)(3).  Plaintiffs have rectified this deficiency by supplying additional information regarding Defendant's policies and clarifying that Defendant's policies applied uniformly to all non-exempt employees.  Claims based on this type of commonly-applied policy are generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3).  See, e.g., Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, despite minor factual difference between individual class members, where the case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"); In re Wells Fargo Home Mortg. Overtime Pay Litig., 527 F.Supp.2d 1053, 1065-1068 (N.D. Cal. 2007) (finding predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members); Gardner v. GC Servs., LP, 2011 WL 5244378, at *5 (S.D. Cal. 2011) (finding that Rule 23(b)(3) was satisfied where "the claims stem from GC Services' alleged uniform policy of requiring account representative to perform certain pre-shift, post-shift, and lunch time tasks without compensation. . . .").

In sum, the Court concludes that Plaintiffs have demonstrated that conditional class certification under Rule 23(a) and Rule 23(b)(3) is warranted.

### B.    Conditional Certification of a FLSA Collective Action

In addition to seeking conditional certification of a Rule 23 class action, Plaintiffs also seek conditional certification of a FLSA collective action consisting of all employees employed by Defendant during the Class Period that opt-in to the FLSA aspect of the settlement.

Under the FLSA, employers must pay their employees a minimum wage and overtime wages for hours worked in excess of forty per week.  See 29 U.S.C. §§ 206, 207.  If an employer fails to do so, an aggrieved employee may bring a collective action on behalf of "similarly situated" employees based on their employer's alleged violations of the FLSA.  Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th

Cir. 2000).  The decision as to whether to certify a collective action is within the discretion of the district court.  <u>Adams v. Inter-Con Sec. Sys.</u>, 242 F.R.D. 530, 535 (N.D. Cal. 2007) (citing <u>Leuthold v. Destination Am., Inc.</u>, 224 F.R.D. 462, 466 (N.D. Cal. 2004)).  The plaintiff bears the burden of showing that the putative collective action members are "similarly situated."  <u>Adams</u>, 242 F.R.D. at 535-536; <u>Leuthold</u>, 224 F.R.D. at 466.

Although the FLSA does not define "similarly situated," federal courts have generally adopted a two-step approach to determine whether to permit a collective action to proceed.  <u>Hill v. R & L Carriers, Inc.</u>, 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010). The first step is the "notice stage," at which time the district court assesses whether potential class members should be notified of the opportunity to opt-in to the action. <u>Buenaventura v. Champion Drywall, Inc. of Nev.</u>, 2012 WL 1032428, at *8 (D. Nev. 2012).  "Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)."  <u>Harris v. Vector Marketing Corp.</u>, 753 F.Supp.2d 996, 1003 (N.D. Cal. 2010) (citing cases).  "Plaintiff need not show that his position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members."  <u>Edwards v. City of Long Beach</u>, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006).  "Since this first determination is generally made before the close of discovery and based on a limited amount of evidence, the court applies a fairly lenient standard and typically grants conditional class certification." <u>Misra v. Decision One Mortg. Co., LLC</u>, 673 F.Supp.2d 987, 993 (C.D. Cal. 2008).[4]

---

[4] At the second step—typically initiated by a motion to decertify after discovery is complete—the court engages in a more searching inquiry.  <u>Leuthold</u>, 224 F.R.D. at 466. "Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice."  <u>Id.</u> at 467.

Here, the Court finds that Plaintiffs have satisfied the lenient standard for conditional certification. They have adequately demonstrated that the potential collective action members were subject to the same policy that resulted in Defendant's failure to pay them overtime wages to which they were lawfully entitled under the FLSA. By meeting the more "stringent" requirements for conditional class certification, the Court finds that Plaintiffs have sufficiently shown that potential collective action members are "similarly situated" within the meaning of the FLSA for purposes of conditional certification.

### C. Fairness of the Settlement

Rule 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 952. "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).

Where, as here, a settlement has been reached prior to formal class certification, "a higher standard of fairness" applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]" Hanlon, 150 F.3d at 1026.[5] In undertaking a fairness inquiry, the settlement must be "taken as a whole, rather than the individual component parts, that must be examined for overall

---

[5] Incentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, may not be given due regard by the negotiating parties. Staton, 327 F.3d at 959-960 (characterizing the inherent dangers of class settlements as encompassing the possibility that the agreement is the product of fraud or overreaching by, or collusion between, the negotiating parties).

fairness."  <u>Id.</u>  The Court has no power to "delete, modify or substitute certain provisions"—and the settlement "must stand or fall in its entirety."  <u>Id.</u>

To make a fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  <u>See</u> <u>Molski v. Gleich</u>, 318 F.3d 937, 953 (9th Cir. 2003).   In conducting this evaluation, it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms.  <u>See</u> <u>Officers for Justice</u>, 688 F.2d at 625.

Given that some of these "fairness" factors cannot be fully assessed until the Court conducts the final approval hearing, " 'a full fairness analysis is unnecessary at this stage.' "  <u>See</u> <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). Rather, preliminary approval of a settlement and notice to the proposed class is appropriate: if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ."  <u>In re Tableware Antitrust Litigation</u>, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

The Court finds that the factors set forth in <u>In re Tableware Antitrust Litigation</u> weigh in favor of preliminarily approving the settlement.  First, the settlement was reached after the parties participated in private mediation, which "tends to support the conclusion that the settlement process was not collusive."  <u>Villegas v. J.P. Morgan Chase & Co.</u>, 2012 WL 5878390, at *6 (N.D. Cal. 2012).  In addition, the record reveals that the parties aggressively litigated this action and were appropriately informed in negotiating

the settlement, which further supports the conclusion the proposed settlement is the product of serious, informed, noncollusive negotiations.  Second, there are no obvious deficiencies.  To the contrary, the settlement confers tangible monetary benefits to the class—namely, a gross settlement amount of $800,000.  There is no indication that the proposed settlement improperly grants preferential treatment to class representatives or segments of the class.  The methodology agreed to by the parties for allocating the Net Settlement Fund appears fair and reasonable.  Third, based on its experience with similar actions, the Court finds that the settlement amount of $800,000 preliminarily appears to be fair, reasonable, and adequate in light of the "maximum damage exposure" calculated by Plaintiffs and the risks and costs attendant with further litigation.[6]  Thus, for purposes of preliminary approval, the Court is satisfied that the settlement amount is within the range of possible approval.[7]

Finally, the Court notes that it has some concern regarding Plaintiffs' anticipated request for attorneys' fees based on one-third of the net settlement fund in light of the fact that the benchmark for such an award is twenty-five percent.  See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011).  Despite this concern, the Court

---

[6] While the Court has some concern regarding the fact that Plaintiffs did not provide a detailed analysis of how they arrived at the settlement figure, issues concerning the amount of the settlement are better resolved at the final approval hearing.  See Harris v. Vector Marketing Corp., 2011 WL 1627973, at *14 (N.D. Cal. 2011) (noting that after the claims process is completed, "the parties and the Court will be in a position to accurately calculate the value of the settlement and compare it to the maximum damages recoverable were the Plaintiff class to succeed at trial").  In their motion for final approval, Plaintiffs should provide information that allows the Court to compare the value of the settlement with the maximum damages recoverable if the settlement classes were to prevail at trial.

[7] The Court notes that it previously determined that the proposed settlement was obviously deficient for various reasons.  The Court also determined that Plaintiffs had failed to demonstrate that the allocation of the settlement fund did not unfairly benefit certain class members and that the settlement falls within the range of possible approval.  Having reviewed the terms of the modified Settlement Agreement and considered the materials submitted in connection with the instant motion, the Court finds that Plaintiffs have adequately rectified the concerns previously identified by the Court in its prior order.

need not resolve this matter at the preliminary approval stage, since the propriety of the fee request is an issue that can be determined at the Final Fairness Hearing.  However, Plaintiffs' counsel should be mindful of this issue in connection with their motion for attorneys' fees and for final approval.[8]

### D.   Notice

Where a proposed settlement has been reached by the parties, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed.R.Civ.P. 23(e)(1).  Notice must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.  <u>Mendoza v. United States</u>, 623 F.2d 1338, 1352 (9th Cir. 1980).  In order to satisfy due process considerations, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  <u>Silber v. Mabon</u>, 18 F.3d 1449, 1454 (9th Cir. 1994).

For classes certified under Rule 23(b)(3), the Court must direct to class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed.R.Civ.P. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the

---

[8] The proposed Settlement Agreement provides that the named Plaintiffs shall each receive an incentive award of $5,000 for their role as a class representative. Settlement Agreement ¶ 2.5(c).  In the Northern District of California, a $5,000 incentive award is presumptively reasonable.  <u>In re WalMart Stores, Inc. Wage and Hour Litig.</u>, 2011 WL 31266, at *4 (N.D.Cal.2011) (Armstrong, J.) (noting that a $5,000 incentive award is presumptively reasonable in this District).  However, the appropriate amount of the incentive awards will be resolved in connection with the Final Fairness Hearing.

binding effect of a class judgment on members under Rule 23(c)(3)."  Id.  In an FLSA

action, "the court must provide potential plaintiffs 'accurate and timely notice concerning

the pendency of the collective action, so that they can make informed decisions about

whether or not to participate.' "  Adams, 242 F.R.D. at 539 (quoting Hoffman–La Roche

v. Sperling, 493 U.S. 165, 170 (1989)).

        Plaintiffs propose mailing the Class Notice and Claim Form to putative class

members by first class mail.  The Court finds such notice adequate under the

circumstances to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections.[9]  See Walsh v. Great Atl. & Pac. Tea Co., 726

F.2d 956, 963 (3d Cir. 1983) (noting that notice by publication and mail has been found

to be "clearly adequate").  In addition, the Court finds that the Class Notice satisfies the

requirements under Rule 23(c)(2)(B).  The Class Notice sufficiently describes the nature

of the action and the claims, summarizes the terms of the settlement and the benefits to

settlement class members, and identifies the class.  The Class Notice also adequately

instructs class members on how to opt-out of the Rule 23 class (including the time and

manner to request exclusion), object to the settlement, and opt-in to the FLSA collective

action.  Further, the Class Notice informs class members that they may enter an

appearance through an attorney if the member so desires, explains the binding effect of a

class judgment on members, and identifies the amount of the incentive award for each of

the Plaintiffs as well as the proposed fees and expenses to be paid to Plaintiffs' counsel

and the Claims Administrator.  See Badame, Decl., Exh. B.  The Class Notice also clearly

explains that class members must file a Claim Form in order to receive a full settlement

award; that, by submitting a Claim Form, class members are opting-in to the FLSA

---

        [9] In its prior order, the Court expressed concern that the parties' agreement only
afforded putative class members 30 days to submit their claim forms and to object to the
proposed settlement.  The parties have since revised the Settlement Agreement to provide
for a 60-day period to mail claim forms and a 60-day period to mail any objection(s) to
the proposed settlement.  This is sufficient to address the Court's concern that the notice
period and the period to object to the proposed settlement are too short.

collective action and will release all rights and claims arising under the FLSA unless they expressly indicate otherwise; that class members must send a letter to the Claims Administrator to opt-out of the class action; and that by doing nothing, class members will receive $10.00 and release their state law claims and retain their FLSA claim.  Id.

The Court concludes that the Class Notice is sufficient to satisfy the notice requirements of Rule 23 and the FLSA.  However, the Class Notice should be modified to expressly state that an objector will not be allowed to present any argument or comment at the Final Fairness Hearing unless he or she has timely objected to the settlement and accompanied said objection with a request to appear.  See McClellan v. SFN Group, Inc., 2012 WL 2367905, *5 (N.D. Cal. 2012).  The Class Notice shall be modified accordingly.

## III.    CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Plaintiffs' renewed motion for preliminary approval of class action settlement is GRANTED.

2.      The Court conditionally certifies a Rule 23 class action and a FLSA collective action defined as follows:  "All persons who worked for Aaron Brothers, Inc., as non-exempt, hourly employees within the State of California at any time during the period from May 7, 2005 through the present."

3.      Tijero and Godfrey are appointed as the Class Representatives.

4.      Badame & Associates, APC, and The Law Offices of Daniel L. Feder are appointed as Class Counsel.

5.      Rust Consulting, Inc., is appointed as the Claims Administrator.

6.      Within seven (7) days from the date this Order is filed, Plaintiffs shall submit a revised Class Notice to the Court which modifies the notice as set forth above.

7.      Within thirty (30) days from the date this Order is filed, Defendant shall provide the Claims Administrator with the name, last known home address, home

telephone number, email address, social security number, and data pertaining to the dates of employment for each class member.

8.      Within thirty (30) days after receipt by the Claims Administrator of the putative class members' identifying information, the Claims Administrator shall mail the Class Notice and Class Claim Form (collectively, the "Class Notice Package") by United States First Class Mail.

9.      The deadline for class members to mail a Claim Form and/or mail any objection(s) to the Settlement Agreement is sixty (60) days from the date the Claims Administrator mails the Class Notice Package or not more than twenty-one (21) days after the date the Class Notice Package is re-mailed.

10.      The deadline to mail a request to be excluded from the class is sixty (60) days from the date the Claims Administrator mails the Class Notice Package or not more than twenty-one (21) days after the date the Class Notice Package is re-mailed.

11.      The deadline for Class Counsel to file a motion for attorneys' fees, costs, an incentive awards to the Class Representatives is April 1, 2014.

12.      The deadline for Plaintiffs' to file a motion for final approval of class action settlement, as well as the Claims Administrator to file a declaration of due diligence and proof of mailing is May 6, 2014.

13.      A Final Fairness Hearing shall take place on May 27, 2014 at 1:00 p.m. The matter of Class Counsel's motion for attorneys' fees, costs, and incentive awards to the Class Representatives will be considered at the Final Fairness Hearing.

IT IS SO ORDERED.

Dated:  12/19/2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge